IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| APRIL WHITE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12-5037-CV-SW-DGK-SSA |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AFFIRMING ALJ

Plaintiff April White seeks judicial review of the Commissioner's denial of her application for supplemental security income ("SSI") benefits under Title XVI of the Act, 42 U.S.C. §§ 1381, *et seq.* Plaintiff has exhausted all administrative remedies, and judicial review is now appropriate under 42 U.S.C. § 1383(c)(3).

White alleges she became disabled as of July 4, 2012 due to blindness in her right eye, anxiety, and panic attacks, and is therefore unable to engage in substantial gainful employment as a matter of law. After independent review of the record, carefully considering the arguments set forth by the parties, the Court finds the Commissioner's decision denying SSI benefits is supported by substantial evidence on the record as a whole. The Commissioner's decision is AFFIRMED.

**Procedural and Factual Background**

The complete facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

## Standard of Review

A federal court's review of the Commissioner of Social Security's decision to deny disability benefits is limited to determining whether the Commissioner's findings are consistent with the Social Security Act, the relevant case law, and the regulations, and whether they are supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). Substantial evidence is less than a preponderance, but it is "enough that a reasonable mind would find it adequate to support the ALJ's decision." *Id.* In making this determination, the court considers evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Id.* If substantial evidence in the record supports the Commissioner's decision, the court may not reverse because substantial evidence in the record supports a contrary result or because the court may have decided the case differently. *Id.*

## Discussion

To establish entitlement to benefits, Plaintiff must show that she is unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of no less than 12 months. 42 U.S.C. 1382(a)(3)(A). To determine a claimant's eligibility for SSI, the Commissioner employs a five-step evaluation process.[1] *See* 20 C.F.R. §§ 404.1520(a) and 416.920(a).

---

[1] There is a five-step process for determining eligibility. If the fact-finder determines at any step of the evaluation process that the claimant is or is not disabled, the inquiry does not continue. The applicant bears the burden of showing he is disabled from steps one through four of the process. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009). At step five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *Id.* The steps proceed as follows: First, the Commissioner determines if the applicant is currently engaged in substantial gainful activity. If so, the applicant is not disabled; if not, the inquiry continues. At step two, the Commissioner determines if the applicant has a "severe medically determinable physical or mental impairment" or a combination of impairments that has lasted or is expected to last for a continuous 12-month period. If not, the applicant is not disabled; if so, the inquiry continues. At step three, the Commissioner considers whether the impairment or combination of impairments meets the criteria of any impairment listed in Appendix 1 of 20 C.F.R. § 404.1520. If so, the applicant is considered disabled; if not, the inquiry continues. At step four, the

At Plaintiff's hearing, the administrative law judge ("ALJ") found that Plaintiff has the following severe impairments, right eye blindness, headaches, depressive disorder, anxiety disorder, and learning disabilities, but that these impairments do not meet or equal a listed impairment. R. at 10. The ALJ then found that Plaintiff retained the residual functional capacity ("RFC") to perform a range of medium work with some restrictions, including: she could not climb ladders, ropes, or scaffolds; she could not drive or be around hazards; she should not work in occupations that require good depth perception; she should not be required to read fine print or computer screens; she could perform simple, routine, and repetitive tasks with occasional social interactions; and she could not perform occupations requiring more than third-grade literacy or math skills. R. at 13. The ALJ concluded that while Plaintiff could not perform her past relevant work as a telemarketer or nurse's aide, she could perform other occupations, such as hand packager, garment bagger, burr grinder, casting machine tender, dessert cup machine feeder, paper bag press operator, rubber crimper, and housekeeper, that exist in significant numbers in the national economy. R. at 19-21.

Plaintiff argues that the ALJ erred by: (1) incorrectly determining that Plaintiff did not meet or equal the requirements of Listing 12.05 and (2) failing to give proper weight to the opinion of Plaintiff's therapist.

**A. Substantial evidence supports the ALJ's determination that Plaintiff does not meet the requirements of Listing 12.05.**

Plaintiff first argues that the ALJ erred in finding that her conditions did not meet the requirements of disability under Listing 12.05 for "mental retardation."

---

Commissioner considers if the applicant's residual functional capacity allows the applicant to perform past relevant work. If so, the applicant is not disabled; if not, the inquiry continues. At step five, the Commissioner considers whether, in light of the applicant's residual functional capacity, age, education and work experience, the applicant can perform any other kind of work. 20 C.F.R. § 404.1520(a)(4)(i)-(v) (2009); *King*, 564 F.3d at 979 n.2.

At step three of the sequential evaluation process, an ALJ must consider whether a claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 416.920(a)(4)(iii). "For a claimant to show that [her] impairment matches a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). A claimant's impairment may be medically equivalent to a listing if the claimant has other impairment-related findings that are at least of equal medical significance to the required criteria. 20 C.F.R. § 416.926(b). The claimant bears the burden of establishing that she meets a listing. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5 (1987); *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004).

> Listing 12.05 provides, in relevant part:
>
> *Mental retardation:* Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity is met when the requirements in paragraphs A, B, C, and D are satisfied.
>
> \*\*\*
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App.1, § 12.05.

Thus, to meet the requirements of a 12.05 listing, the claimant must show that her impairment meets the requirements set forth in the introductory paragraph and any one of the four sets of additional paragraphs A through D. *Maresh v. Barnhart*, 438 F.3d 897, 899-900 (8th Cir. 2006). At issue in this case is whether Plaintiff meets the requirements of 12.05C. To meet these requirements, Plaintiff must show: (1) significantly subaverage general intellectual

functioning with deficits in adaptive functioning initially manifested before age 22; (2) a valid verbal, performance, or full scale IQ of 60 through 70; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation of function. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

Plaintiff argues that the ALJ erred in finding that she does not meet the above requirements. The Court finds this argument without merit. As the ALJ noted, Plaintiff's 1994 intelligence testing revealed a full scale IQ of 81, a performance IQ of 92, and a verbal IQ of 74, all of which are above the minimum listing requirements of 12.05C. R. at 12, 16, 217. The ALJ also reported that Plaintiff had a 1997 TONI-2 score of 82, which is "comparable to her IQ scores from previous evaluations." R. at 16, 218.

Plaintiff maintains that the ALJ should have ordered additional and updated IQ testing because of her "borderline functioning." To support her argument, Plaintiff cites to Eighth Circuit case law holding that "the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press [her] case." *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004).

However, Eighth Circuit case law has also recognized that IQ scores are presumed to be constant over time absent any evidence of a change in the Plaintiff's intellectual functioning. *Muncy v. Apfel*, 247 F.3d 728, 734 (8th Cir. 2001). Here, the medical record contains no evidence that Plaintiff's intellectual functioning declined from the time her IQ testing was performed in 1994 to the present date. In fact, recent medical examinations found that Plaintiff had no cognitive impairments and that Plaintiff's judgment and insight were intact. R. at 303, 343-344, 354-55, 366-67. Absent evidence of a decline in cognitive functioning, the Court finds the ALJ did not err in declining to obtain additional cognitive testing.

Plaintiff also failed to show that her other impairments were medically equivalent to the listing requirements of 12.05. For example, as the ALJ noted, despite receipt of special education services, by the 11th grade, Plaintiff's language ability was "at age level" and she graduated from high school. R. at 16-17, 208. After graduating, Plaintiff held various jobs. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00D(3) (noting that the ability to hold a job is "particularly useful in determining [the individual's] ability or inability to function in a work setting"). Plaintiff drove, cooked, managed her finances, played video games, used a computer, shopped in stores, provided transportation for her children, hunted, fished, and did the dishes and laundry. R. at 11, 161-67, 170. Plaintiff also reported that she could count change, handle a checking and savings account, follow verbal instructions, and did not need reminders to take her medication or to go places. R. 162-66, 170. Plaintiff's level of educational attainment and daily living activities are inconsistent with a finding of significant deficits in adaptive functioning. Therefore, the record does not support Plaintiff's contention that she had deficits equivalent to Listing 12.05.

Because the ALJ properly concluded that Plaintiff does not meet or have impairments medically equal to Listing 12.05, the ALJ's decision that Plaintiff is not disabled must be upheld.

### B. The ALJ properly weighed the medical opinions of record and correctly formulated Plaintiff's RFC.

Plaintiff also argues that the ALJ failed to properly weigh the medical source opinion of her counselor, Ms. Barbara Khan, and, therefore incorrectly determined Plaintiff's RFC.

A claimant's RFC is the most she can do despite the combined effect of her credible limitations. 20 C.F.R. § 416.945(a). It is the claimant's burden to prove her RFC, *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005), and the ALJ's responsibility to determine RFC based on all relevant evidence in the record. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir.

2000) ("The Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations.").

After considering all evidence in the record, the ALJ concluded that Plaintiff maintained the RFC to perform medium exertional work with additional limitations. R. at 12-13. Plaintiff claims that the ALJ's RFC did not properly account for the mental limitations identified by her treating mental health therapist, Ms. Barbara Khan. Specifically, Plaintiff maintains that the ALJ failed to account for Ms. Khan's opinions that Plaintiff had significant limitations in her ability to maintain attention and concentration for extended periods, complete a normal workday or work week without interruption, and adapt to usual work changes. R. at 369-70. After considering all the evidence, the ALJ gave little weight to Ms. Khan's opinion. R. at 19.

The Commissioner's regulations and rulings address the manner in which an ALJ must consider medical and other opinion evidence when determining RFC. 20 C.F.R. § 416.927; SSR 96-2p; SSR 06-3p. Pursuant to 20 C.F.R. § 416.913(a), a therapist is not an "acceptable medical source." *See* 20 C.F.R. § 416.913(d) (discussing how to use "other sources" in to show the severity of a claimant's impairment). In evaluating opinion evidence of an "other source," an ALJ may consider factors such as (1) the length and frequency of treatment, (2) the nature and extent of the treatment relationship, (3) the degree to which the medical source opinion is supported by medical signs and laboratory findings, (4) the degree to which the medical source opinion is consistent with the record as a whole, (5) whether the medical source is a specialist, and (6) the amount of understanding of the disability programs and requirements that the medical source has. 20 C.F.R. § 416.927(c); SSR 06-3p.

In the instant case, the ALJ properly noted that Ms. Khan was not an acceptable medical source but that her opinion could still be considered in determining the severity of Plaintiff's alleged impairments. Consistent with SSR 06-3p, the ALJ considered a number of factors in weighing Ms. Khan's opinion as an "other source." For example, the ALJ noted that Ms. Khan had seen Plaintiff only three times before completing the questionnaire regarding her limitations. R. at 19. *See* 20 C.F.R. § 416.927(c)(2) (finding that an ALJ may consider the length of the treatment relationship and the frequency of examination in evaluating opinion evidence).

The ALJ also found that Ms. Khan's opinion that Plaintiff suffered extreme mental limitations was not supported by her own treatment notes indicating that Plaintiff had "sustained mood improvement" and "manageable" anxiety. R. at 19, 363-63. *See* 20 C.F.R. § 416.927(c)(3) ("The more a medical source presents evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.").

Furthermore, the ALJ noted that Ms. Khan's opinion was inconsistent with the record as a whole. R. at 19. *See* 20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). For example, Dr. Jerry Jumper, M.D. repeatedly noted that Plaintiff displayed no signs of depression, anxiety, or agitation in March, April, and July 2011. R. at 344, 355, 367. Dr. Khan's opinion was also inconsistent with Plaintiff's daily living activities. Despite Dr. Khan's opinion that Plaintiff sustained extreme limitations in concentration and social interaction, Plaintiff reported no difficulties getting along with others and no significant problems with memory, concentration, or focus. R. at 17, 166, 369-70.

Finally, the ALJ discounted Ms. Khan's opinion because she did not provide any explanation or basis for it. R. at 19. Rather, she checked the boxes without any rationale for her

position. *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (noting that checklist opinions have limited evidentiary value); 20 C.F.R. § 416.927(c)(3) ("The better an explanation a source provides for an opinion, the more weight we will give that opinion.").

Thus, the ALJ properly discounted Ms. Khan's opinion of Plaintiff's disabling mental conditions. Because the ALJ based his RFC finding upon the record as a whole, including all evidence he found credible, the ALJ's RFC determination must be upheld.

## Conclusion

After careful examination of the record as a whole, the Court finds the Commissioner's determination is supported by substantial evidence on the record. Accordingly, the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date: April 16, 2013              /s/ Greg Kays
                                  GREG KAYS, JUDGE
                                  UNITED STATES DISTRICT COURT